# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **KAREN BARRYMAN-TURNER,** | ) | |
|  | ) | |
| **Plaintiff,** | ) | |
|  | ) | |
| **v.** | ) | **Civil Action No. 14-00035 (RDM)** |
|  | ) | |
| **DISTRICT OF COLUMBIA, ET AL.,** | ) | |
|  | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Karen Barryman-Turner, a former employee of the District of Columbia ("the

District" or "D.C.") Department of Corrections, alleges that the D.C. Department of Employee

Services (the "Agency") terminated her disability compensation benefits without adhering to the

requirements of the Due Process clause of the Fifth Amendment and District of Columbia law.

The first five counts of the complaint assert constitutional claims under 42 U.S.C. § 1983.  The

sixth count alleges that Defendants violated Subsections 1-624.24(b) and (d) of the D.C. Code by

requiring Plaintiff to seek reconsideration of the order terminating her benefits before allowing

her to request a hearing before a hearing officer.  Dkt. 1 ¶ 47.

The matter is now before the Court on the Defendants' Motion to Dismiss (Dkt. 4).  That

motion (1) raises a statute of limitations defense; (2) challenges Plaintiff's standing to seeking

injunctive or declaratory relief; (3) argues that Plaintiff is barred from seeking damages for the

alleged violation of D.C. law for failure to comply with the District's six-month notice

requirement; and (4) maintains that the official capacity claims brought against the named

officials should be dismissed as duplicative of the claims against the District.  For the reasons set

1

forth below, the Court rejects Defendants' statute of limitations defense, agrees that Plaintiff has

not established standing to obtain prospective relief, agrees that Plaintiff is not entitled to seek

damages for the alleged violation of D.C. law, and agrees that the claims against the named

officials should be dismissed as duplicative.  Defendants' Motion to Dismiss is, accordingly,

**GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND

The complaint, the factual allegations of which are taken as true for purposes of this

motion, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), alleges that Plaintiff was

injured on March 3, 1996, when she was struck on the head in the course of her employment

with the D.C. Department of Corrections.  Dkt. 1 ¶ 26.  As a result of that injury, Plaintiff was

ultimately awarded benefits under the District's Comprehensive Merit Personnel Act ("CMPA"),

D.C. Code §§ 1-601.01*, et seq*., and received those benefits from March 3, 1996 until May 16,

1998.  Dkt. 1 ¶ 26-27.  On May 31, 1998, Plaintiff was re-injured.  She was subsequently

awarded benefits beginning on the date of the re-injury.  *Id.* ¶ 28.  Her benefits were terminated,

however, effective May 17, 2003.  *Id.* ¶ 29.

Even before Plaintiff's benefits were terminated, a class-action suit was brought against

the District challenging "the policies and procedures applied to terminate, suspend, and modify

[the] disability compensation benefits" of a class of former D.C. employees.  *See Elizabeth*

*Lightfoot v. District of Columbia,* Civ. No. 01-1484 (D.D.C. January 16, 2007)*.*  Like the present

action, that case alleged that these procedures violated the Due Process clause of the Fifth

Amendment and (albeit for reasons different from those alleged here) D.C. law, and it sought

declaratory and injunctive relief. [1]  *See* Complaint, *Lightfoot*, Civ. No. 01-1484, Dkt. 152 at 3

(D.D.C. January 16, 2007).  The constitutional claims asserted in *Lightfoot*, like those asserted

here, included both facial and as-applied challenges to D.C. Code § 1-623.24(d) and alleged that

beneficiaries were not provided an adequate opportunity to demonstrate their continuing

entitlement to benefits.  *Id.* at 28.  Other claims challenged a number of the Agency's alleged

practices, including, among other things, its failure to provide adequate notice of a beneficiary's

right to appeal an adverse decision and to retain counsel, its failure to provide adequate rationales

for its decisions, and its failure to engage in reasoned decision-making when terminating,

suspending or modifying benefits.  *Id.* at 29-30.  Finally, in the only claim based on D.C. law, the

*Lightfoot* complaint alleged that the defendants violated D.C. Code § 2-505 by adopting policies

governing changes to benefits without publishing the required notice in the District of Columbia

Register.  *Id.* at 30.

> On January 14, 2004, the *Lightfoot* court certified the following class:
>
> All persons who received disability compensation benefits pursuant to D.C. Code
> § 1-623.1, et seq. and whose benefits were terminated, suspended or reduced
> between June 27, 1998 and April 5, 2005, the date on which the Disability
> Compensation Effective Administration Amendment Act of 2004, D.C. Act 15-
> 685, 52 D.C. Reg. 1449 (Jan. 4, 2005), took effect.  "Disability compensation
> benefits" is defined to exclude a scheduled award provided in D.C. Code § 1-
> 623.7 expiring at the end of the statutory term, continuation of pay provided in
> D.C. Code § 1-623.18(a) expiring at the end of the statutory term, funeral
> expenses provided in D.C. Code § 1-623.34, a fully paid lump sum settlement
> provided in D.C. Code § 1-623.35, and credited compensation leave provided in
> D.C. Code § 1-623.43.

*Lightfoot*, Civ. No. 01-1484, Dkt. 541 at 5.

---

[1]  The *Lightfoot* plaintiffs also brought a claim against a different defendant, CLW/Creative
Disability Management, which is not relevant here.  *See Lightfoot*, No. 01-cv-1484, Dkt. 152 at
30-31.

After substantial motions practice in the district court and a related appeal, the *Lightfoot* court ultimately dismissed all of the class-wide claims, except for the as-applied due process challenge to D.C.'s alleged failure to provide beneficiaries an adequate opportunity to show that they were entitled to continue to receive benefits.  The facial challenge to D.C. Code § 1-623.24(d) was dismissed because Plaintiffs had failed to establish "that no set of circumstances exist under which the [law] would be valid."  *Lightfoot*, Civ. No. 01-1484, Dkt. 330 at 11 (internal quotations omitted).  The remaining constitutional claims were dismissed on the merits for failure to state a claim.[2]  The *Lightfoot* court then declined to exercise supplemental jurisdiction over the sole D.C. law claim, and dismissed it without prejudice.  *Lightfoot*, Civ. No. 01-1484, Dkt. 316 at 23.  Thus, after the *Lightfoot* court's order of April 10, 2007, the only surviving claim against the District was the as-applied challenge to D.C. Code § 1-623.24(d). *Lightfoot*, Civ. No. 01-1484, Dkt. 330.

Then, after the parties completed further discovery on the sole remaining claim, the *Lightfoot* court decided to "revisit the certification question" in light of the "markedly different" procedural posture and the "significantly more developed" evidentiary record.  *Lightfoot*, Civ. No. 01-1484, Dkt. 541 at 5 (Jan. 10, 2011).  The court concluded that plaintiffs could "satisfy neither the commonality requirement of Rule 23(a)(2) nor the cohesiveness requirement of Rule

---

[2]  Specifically, Claim Three was dismissed because the Court found that the notice provided to beneficiaries was, as a matter of law, adequate to advise them of their statutory rights; Claim Four was dismissed because the explanations of the grounds upon which their terminations were based satisfied the requirements of due process; and Claim Five was dismissed because the Court concluded that the claim essentially challenged the substance of the Agency's decisions and a such was "decidedly not a process issue."  *Lightfoot*, Civ. No. 01-1484, Dkt. 316 at 2 (internal quotation omitted).  Claim Six was dismissed because, as the Court of Appeals held on interlocutory review, an agency is not required to establish standards through rule-making rather than case-by-case determinations in order to comply with due process.  *Lightfoot v. District of Columbia*, 448 F.3d 392, 398 (D.C. Cir. 2006).

4

23(b)(2)." *Id.* at 18.  The court emphasized that the plaintiffs failed to identify a policy or

custom that was common to the class and noted that there were significant, potentially

dispositive variations of fact between different plaintiffs.  *Id.* at 19-20, 28.  As a result, the

*Lightfoot* court decertified the class on January 10, 2011.  *Lightfoot*, Civ. No. 01-1484, Dkt. 541.

Plaintiff commenced this lawsuit on January 9, 2014, just one day short of three years

from the day the *Lightfoot* class was decertified.  On March 18, 2014, Defendants filed the

pending motion to dismiss.  Dkt. 4.

## II.  DISCUSSION

Defendants move to dismiss on a variety of grounds.  The Court will address each

argument in turn.

### A.   Statute of Limitations And *American Pipe* Tolling

Defendants first contend that all of Plaintiff's claims are time-barred.  They assert, and

Plaintiff does not dispute, that Plaintiff's claims are subject to the District of Columbia's three-

year residual statute of limitations, which applies to Section 1983 claims, *see Earle v. District of

Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012); and "presumably" to Plaintiff's claim under D.C.

law, *see* D.C. Code § 12-301(1)-(11).  Dkt. 4 at 5.  Because Plaintiff did not file suit until more

than ten years after the last event giving rise to her claims for relief, according to the Defendants,

all six claims miss the statute of limitations by a wide margin.  *Id*. at 4.

Plaintiff does not take issue with Defendants' version of the timeline, but, rather, invokes

the Supreme Court's decision in *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974),

which held "that the commencement of a class action suspends the applicable statute of

limitations as to all asserted members of the class who would have been parties had the suit been

permitted to continue as a class action."  Because the *Lightfoot* class action was filed before the

events giving rise to Plaintiff's lawsuit and was not decertified until January 10, 2011, Plaintiff

maintains that the statute of limitations did not expire until January 10, 2014—precisely three

years after the decertification order and one day after Plaintiff commenced this action.

Defendants, for their part, do not dispute that Plaintiff was a member of the *Lightfoot*

class or that *American Pipe* tolling applies here.  Dkt. 6 at 2 n.2.  They argue, instead, that

*American Pipe* tolling is a species of equitable tolling and that equitable tolling does not create

"an automatic extension of the statute of limitations by the length of the tolling period."  *Phillips*

*v. Heine*, 984 F.2d 489, 492 (D.C. Cir. 1993) (citing *Cada v. Baxter Healthcare Corp*., 920 F.2d

446, 452 (7th Cir. 1990).  Rather, according to Defendants, *American Pipe* only extends the

statute of limitations for a "reasonable period" following the rejection or dismissal of a putative

class action.  Dkt. 6 at 2.  "Reasonableness," in turn, requires that the court consider whether the

proponent of tolling pursued his or her claims diligently.  Dkt. 6 at 3.  Here, Defendants argue,

waiting a full three years after the *Lightfoot* class was decertified—and nearly eleven years after

the last of the events giving rise to Plaintiff's claims—was not reasonable.  Dkt. 6 at 4.

The question whether *American Pipe* tolling is properly understood as a form of

"equitable" tolling or, in contrast, as a form of "legal" tolling implicit in Rule 23 is unsettled.  On

one hand, much of the Supreme Court's analysis in *American Pipe* focuses on Rule 23 and the

representative nature of class actions.  The Court explained, for instance, that a class actions is "a

truly representative suit," such that "the filing of a timely class action complaint commences the

action for all members of the class as subsequently determined."  *American Pipe*, 414 U.S. at

550.  Class members are "parties to the suit unless and until" they choose not to participate in the

suit.  *Id.* at 550-551.  The commencement of a class action thus satisfies the purpose of statutes

of limitations "as to all those who might subsequently participate in the suit" because class

members are effectively pursuing relief under Rule 23. *Id.* at 551. If the statute of limitations were not tolled, moreover, then each class member would have to file individual actions to preserve their right to relief—which is precisely what class action suits are designed to avoid. *Id.; see also Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000).

On the other hand, the Supreme Court itself has cited *American Pipe* in discussing equitable tolling, albeit with little discussion. For instance, in *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 n.3 (1990), the Court cited *American Pipe*, along with other cases, for the not-entirely-apposite proposition that it had previously "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *See also Young v. United States*, 535 U.S. 43, 49 (2002) (citing *American Pipe*, along with other cases, in support of proposition that "[i]t is hornbook law that limitations periods are 'customarily subject to equitable tolling,'. . . unless tolling would be 'inconsistent with the text of the relevant statute'"); *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 338 n. (1978) (Burger, C.J., concurring) (citing *American Pipe* for the proposition that "[t]he authority of federal courts, sitting as a chancellor, to toll a statute of limitations on equitable grounds is a well-established part of our jurisprudence").

The courts that have considered the issue, moreover, have reached conflicting conclusions.[3] The Courts of Appeals for the Federal Circuit and the Tenth Circuit have rejected the contention that *American Pipe* recognizes a form of equitable tolling, *see Stone Container*

---

[3] The question whether *American Pipe* tolling is an equitable or legal concept often, although not exclusively, arises when courts consider whether it applies to statutes of repose. Because statutes of repose—unlike statutes of limitation—are not subject to equitable tolling, *see Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), courts generally agree that *American Pipe* tolling may apply to statutes of repose only if it is a legal concept implicit in Rule 23, as opposed to an exercise of a court's equitable power.

*Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000) *and Joseph v. Wiles*, 223 F.3d 1155, 1166-1168 (10th Cir. 2000), and district courts in the First, Third, and Ninth Circuits have arrived at the same conclusion, *see Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164 (D. Mass. 2009); *In re Merck & Co., Inc. Sec., Derivative & Erisa Litig.*, Civ. No. 05-1151, 2012 WL 6840532, *4-5 (D.N.J. Dec. 20, 2012); *and Maine State Retirement System v. Countrywide Financial Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010).

On the other side of the split, district courts in the Fourth, Fifth, Seventh, and Eleventh Circuits have treated *American Pipe* as an equitable tolling doctrine. *See Wade v. Danek Medical, Inc.*, 182 F.3d 281 (4th Cir. 1999); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1146 (5th Cir. 1997); *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1012 (N.D. Ill. 2010); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, Civ. No. 3:07-62, 2008 WL 2385506, *2 (N.D. Fla. June 9, 2008). District courts in the Second Circuit have reached conflicting conclusions. *Compare Footbridge Ltd. Trust v. Countrywide Financial Corp.*, 770 F. Supp. 2d 618 (S.D.N.Y. 2011) (concluding that *American Pipe* is an equitable tolling doctrine); *with Int'l. Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F.Supp.2d 368, 381-82 (S.D.N.Y. 2011) (concluding that *American Pipe* is a legal tolling doctrine).

Although cases on both ends of this divide provide helpful guidance, the Court need not choose sides for purposes of resolving the present motion. However labeled, *American Pipe* tolling does not require that the Court consider on a case-by-case basis whether the plaintiff has pursued his or her claims with requisite diligence. Rather, the rule announced in *American Pipe* was a categorical one: the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe*, 414

U.S. at 554.  The Court, moreover, applied the tolling rule in the same manner that Plaintiff contends that it should apply here.  There, because "the class suit brought by Utah was filed with 11 days yet to run in the period as tolled," the statute of limitations for would-be intervenors continued to run for "11 days after the entry of the order" establishing that the plaintiffs could not proceed as members of the class.  *Id.* at 561.  Although the three-year delay in bringing the present action is very different than an eleven-day delay, the Supreme Court simply counted the days that remained on the statute of limitations and did not hint at the possibility that a further equitable inquiry might be necessary.  The Court's decision in *Crown, Cork & Seal* was equally categorical and mechanical, concluding that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied," and that the plaintiff was entitled to the "full" 90-day statute of limitations to bring his suit.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

*American Pipe*, moreover, expressly declined to incorporate the type of case-by-case equitable considerations that Defendants propose.  To the contrary, the Court held that tolling applies even where plaintiffs were unaware of the existence of the class action, *American Pipe*, 414 U.S. at 551; *see also Tosti v. Los Angeles*, 754 F.2d 1485, 1488-89 (9th Cir. 1985), and thus could not have relied on its pendency to justify their delay in filing.  As the Ninth Circuit explained, a "different rule would require onerous factual disputes about a particular individual's motive for not bringing her own lawsuit."  *Tosti*, 754 F.2d at 1489.  Rather than rely on individual equities, the Supreme Court focused on the nature of Rule 23 and the fact that "potential class members are" treated as "passive beneficiaries of the action brought in their behalf" until the court "order[s] that the suit shall or shall not proceed as a class action," *American Pipe*, 414 U.S. at 552.  "[T]he filing of a timely class action complaint," moreover,

"commences the action for all members of the class as subsequently determined," *id.* at 550, and thus serves the purpose of statutes of limitations by placing the defendants on notice "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Id.* at 555.  None of this suggests that the Supreme Court intended that application of the *American Pipe* rule vary based on the individual equities invoked by each former, putative class member.  To the contrary, as the Court of Appeals for the Fourth Circuit has explained, the *American Pipe* court was "highly sensitive to the need for certainty of a bright-line rule."  *Bridges v. Department of Maryland State Police*, 441 F.3d 197, 212 (4th Cir. 2006).

Two recent decisions in this district have taken this same approach.  *See Mouzon v. Radiancy, Inc.*, Civ. No.14-722, 2015 WL 3823978, at *4 (D.D.C. June 19, 2015) (holding "on April 1, 2015, the day after the Court dismissed this action, all unnamed putative class members were in the same position with respect to the statute of limitations as they were on April 25, 2014" because of *American Pipe* tolling); *Scott v. District of Columbia*, Civ. No. 14-817, 2015 WL 1623847, at *3 (D.D.C. Apr. 9, 2015) ("Plaintiffs had 112 days remaining in their three year statute of limitations period.  Therefore, once tolling ceased, they had 112 days in which to file their claims."); *but see Vine v. Republic of Iraq*, 459 F. Supp. 2d 10, (D.D.C. 2006) (treating *American Pipe* tolling as subject to reasonableness requirements of equitable tolling), *rev'd on other grounds*, *Simon v. Republic of Iraq*, 529 F.3d 1187, 1194-1196 (D.C. Cir. 2008), *rev'd*, *Republic of Iraq v. Beaty*, 556 U.S. 848 (2009).  Other courts have also described the mechanics of *American Pipe* tolling in a similar manner.  *See, e.g.*, *Bridges*, 441 F.3d at 212 (explaining that "[t]he *American Pipe* rule provides a narrow exception to the fixed statutes of limitations, *suspending their running* from the date a class action is filed until the date it is denied" and that

the "statute of limitations resumed running" when court decertified class); *Yang v. Odom*, 392 F.3d 97 (3d Cir. 2004) (holding that because "only two days [of a one-year statute of limitations period] had elapsed between the start of the limitations period and the filing" of a class action complaint, individual plaintiffs' complaints filed six months after the denial of class certification were timely); *Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 561 (noting that district court's determination that *American Pipe* tolling applied "meant that more than six months remained in the limitations period when [the plaintiff] filed suit."). As one commentator has observed, after a district court issues an order denying class certification, plaintiffs "must timely prosecute their claims upon issuance of the order within whatever time remains under the limitations period." 1 McLaughlin on Class Actions § 3:15 (11th ed.).

Under *American Pipe*, the filing of a class action thus functions as a pause button for the claims of all purported class members. The statute of limitations ceases to run for the entire period from the day a class action is filed until the class is decertified or the court declines to certify the class, after which it runs for the full number of days that were remaining on the statute when the class action was commenced. Because Plaintiff's claims were covered by a class action that was filed before those claims accrued, and because Plaintiff's claims were filed within three years of the decertification of the class, the claims are not barred by the three-year statute of limitations. The facts of this case test the limits of *American Pipe* tolling, but the Court concludes that Defendants' statute of limitation defense fails. The Motion to Dismiss Plaintiff's claims as time-barred is, therefore, **DENIED.**

## B.  Standing And The 2005 Amendments To The CMPA

Defendants next argue that even if Plaintiff's claims are not time-barred, to the extent Plaintiff seeks prospective equitable or declaratory relief, her claims should be dismissed

because Plaintiff has not demonstrated any real or immediate threat of future harm and, accordingly, lacks standing to pursue those claims.  *See* Dkt. 4 at 5 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), *Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) (extending *Lyons* standard to request for prospective declaratory relief)).

The crux of Defendants' argument is that the CMPA was substantially amended on April 5, 2005, and that the 2005 amendments resolved the issues that are the subject of Plaintiff's complaint.  The relevant amendments to the CMPA require that the District provide written notice of proposed modifications to disability benefits awards, including documentation supporting the decision, *see* D.C. Code § 1-623.24(d)(1)(A); allow beneficiaries 30 days to contest any proposed modification, *id.* § 1-623.24(d)(1)(B); and prohibit the District from terminating or reducing benefits during that 30 day period or while any objections are reviewed, *id.* §1-623.24(d)(3).  Defendants argues that Plaintiff challenges only the pre-2005 CMPA, *see* Dkt. 1 ¶ 2, and that she "does not allege any injury caused by the post-2005 statutory framework or any threat whatsoever that she may be injured in the future by existing law."  Dkt. 4 at 7.

In opposition, Plaintiff maintains that the modifications to the CMPA did not address all of her concerns and that the District's procedures remain inadequate because the CMPA "allows the employer the right to make a decision on disability without taking any testimony or allowing the employee access to the decision maker."  Dkt. 5 at 4.  Plaintiff does not cite any cases in support of her argument, nor does she explain how she is likely to suffer future harm from the CMPA, as amended.  Instead, she merely expresses the "belie[f] that the changes were not sufficient and prays her day in Court to make this argument."  Dkt. 5 at 4.

Plaintiff, as the "party invoking federal jurisdiction," "bears the burden of establishing" that the requirements of constitutional standing have been met.  *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992).  To meet that burden, Plaintiff must demonstrate that she (1) suffered

an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) a "causal

connection between the injury and the conduct complained of"; and (3) that it is "likely" that the

injury would be "redressed by a favorable decision."  *Id.* at 560-61.  "Where, as here, [the]

plaintiff[ ] seek[s] to enforce procedural (rather than substantive) rights, [she] must establish that

'the procedures in question are designed to protect some threatened concrete interest of [hers]

that is the ultimate basis of [her] standing.'"  *NB v. District of Columbia*, 682 F.3d 77, 81-82

(D.C. Cir. 2012).  If the plaintiff can establish that the law creates a procedural right that protects

her "concrete interests," the imminence and redressability requirements are relaxed, *id.* at 82, but

not "wholly eliminate[ed]."  *Center for Law and Educ. v. Dep't of Educ*, 396 F.3d 1152, 1157

(D.C. Cir. 2005).

    In order to meet her burden of establishing standing to seek prospective relief, Plaintiff

must show that she is "'suffer[ing] an ongoing injury'" or that she "'face[s] an immediate threat

of injury.'"  *Id.* at 82 (quoting *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011)).  Because

the parties have not submitted any evidentiary material relating to standing, the Court must

assess whether the complaint contains factual allegations that—if accepted as true and drawing

all inferences in Plaintiff's favor—would establish a sufficient threat of injury.  *Id.*  As explained

below, the Court concludes that, even liberally construed, the complaint as currently drafted fails

this test.

    Although the CMPA was amended almost nine years before Plaintiff brought this action,

the complaint contains no mention of the amended version of the CMPA that now governs.

Indeed, the complaint appears to go out of its way to limit the facial and as-applied challenges to

the CMPA to the pre-2005 version of the law.  The first time it references the CMPA, the complaint clarifies that "all references to the District of Columbia Code Citation[s] are for the time frame relevant to this complaint," Dkt. 1 ¶ 2—presumably between October 1988 and May 2003, which are the dates included in the factual allegations of the complaint, *id.* ¶¶ 25-29. Moreover, unlike in *NB v. District of Columbia*, 682 F.3d at 82, the complaint contains no allegation of any ongoing or future injury.  At most, it alleges that Plaintiff's benefits were improperly terminated in May 2003, almost 11 years before the complaint was brought.  It does not allege that Plaintiff continued to suffer from any disability that time or that she is likely to seek disability benefits at any time in the future.

Giving Plaintiff the benefit of the doubt, one might argue that the future application of the CMPA is necessarily implicated in this case, since she alleges that she was denied due process in 2003 and, if she were to prevail on that claim, she might be entitled to further administrative review of whether her benefits should have been terminated in 2003.  A question might then arise regarding what process she is due for purposes of that further review.  At this point, however, the Court cannot assess whether Plaintiff is seeking what would, in essence, be a remand to the Agency for further consideration of whether she was entitled to continued benefits in 2003.  Moreover, to the extent Plaintiff might seek to premise her standing to seek prospective relief on that theory, it appears too remote and speculative to support standing at this point in the process.  Indeed, the issue would only arise if the Court were to agree that Plaintiff was denied due process in 2003; the Court were to further conclude that the proper remedy was not an award of damages, but a remand to the Agency; the Agency were to apply constitutionally-deficient procedures following a determination by the Court that the procedures applied in 2003 failed to satisfy due process; and the Agency were to deny Plaintiff's claim for benefits.  Although the

problem is perhaps better cast as one of ripeness, the Court concludes that it would be premature to adjudicate such a speculative dispute.

Thus, as currently cast, the Court cannot conclude that the complaint—even as liberally construed—alleges facts that would demonstrate that Plaintiff has standing to seek prospective relief.  This does not call into question the Court's jurisdiction to resolve Plaintiff's challenge to the revocation of her benefits in May 2003 and, if Plaintiff is successful, to provide appropriate relief for that violation.  Moreover, if Plaintiff is able to allege facts demonstrating that she faces a prospective, concrete injury, she may file an amended complaint within 14 days of this decision.

Defendant's motion to dismiss Plaintiff's claims for prospective relief and to challenge the amended version of the CMPA is, accordingly, **GRANTED** without prejudice.

## C.  D.C. Code § 12-309's Notice Provision

Defendants also argue that to the extent Plaintiff seeks unliquidated damages based on the District's alleged violation of the pre-2005 version of the CMPA, that claim must be dismissed for failure to comply with the notice requirement of D.C. Code § 12-309.  Section 12-309 provides:

> an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309.[4]

---

[4] Section 12-309 applies only to claims arising under District of Columbia law, and accordingly does not apply to Plaintiff's constitutional claims.  *See Brown v. United States*, 742 F.2d 1498, 1509-10 (D.C. Cir. 1984).

In response, Plaintiff argues—with little elaboration—that her claims for damages under D.C. law should not be dismissed for failure to comply with the six-month notice provision for the same reason that her claims should not be dismissed as untimely.  She asserts that "[t]he same arguments concerning full knowledge of the Defendant as to the claims of the Plaintiff are no differen[t] for the statute of limitations defense," and that she "could not and did not have to give the government any notice beyond that required for the prosecution of the *Lightfoot* case." Dkt. 5 at 4.  Plaintiff cites no case law in support of this contention and does not specify whether or how class counsel in the *Lightfoot* action complied with D.C. Code § 12-309.

The Plaintiff bears the burden of proving compliance with Section 12-309.  *See Sheikh v. D.C.*, __F. Supp. 3d __, 2015 WL 58830 at *12 (D.D.C. Jan. 5, 2015).  Moreover, because the Section 12-309 notice requirement is a condition on a waiver of sovereign immunity, it must be strictly construed in favor of the District.  *See Washington Gas Light Co. v. Pub. Serv. Comm'n*, 61 A.3d 662, 676 (D.C. 2013); *see also, e.g.*, *Snowder v. District of Columbia*, 949 A.2d 590, 600 (D.C. 2008); *Day v. District of Columbia Dep't of Consumer & Regulatory* Affairs, 191 F. Supp. 2d 154, 158 (D.D.C. 2002).

As the Court of Appeals has held, notice by class counsel is at times sufficient to satisfy Section 12-309, not only for named plaintiffs, but for all class members.  *Dellums v. Powell*, 566 F.2d 216, 230 (D.C. Cir. 1977).  Here, however, Plaintiff does not contend that class counsel (or anyone else) filed a notice under Section 12-309 purporting to identify the circumstances relating to the violation of the CMPA alleged in her complaint or any corresponding injury or damage. Plaintiff's D.C. law claim, moreover, is not substantively the same as any claim brought in the *Lightfoot* class action; instead, it raises an entirely new challenge to the procedure, based on a statutory provision that was not at issue in the *Lightfoot* litigation.  *Compare* Dkt. 1 ¶ 9 (claim

arising under D.C. Code §§ 1-624.24(b)) *with Lightfoot,* Civ. No. 01-1484, 2007 WL 148777 at *1 (describing *Lightfoot* class action claims).  And, although the *Lightfoot* class action did involve one claim under D.C. law, there is no indication that the *Lightfoot* plaintiffs sought unliquidated damages, which is the trigger for application of Section 12-309, for even that unrelated claim. *See, e.g.*, *Lightfoot*, 448 F.3d at 399 (discussing potential mootness of D.C. law claim and noting that money damages would not be available for that claim).  Because Plaintiff has not met her burden of demonstrating compliance with Section 12-309, her claim for damages for the alleged violation of D.C. law is **DISMISSED**.

## D.  Claims Against Individual Defendants

Finally, Defendants argue that the named officials "should be fully-excused, as any claim against them in their official capacities is duplicative of claims against the District."  Dkt. 4 at 4. Defendants contend that "[s]ummary dismissal of redundant official capacity actions is 'the overwhelming approach that has been taken by members of this Court, as well as the position taken by other courts.'"  Dkt. 4 at 8.  In response, Plaintiff notes that she "believes that her Complaint should be sustained as to these Defendants," Dkt. 5 at 4, but provides no argument or explanation why the Court should reach that result.  She states, moreover, that she "stands ready, willing and able to have [the claims against the officials] dismissed" if the Court concludes that the officials' inclusion is "unnecessary and inefficient to the prosecution" of this matter.  Dkt. 5 at 5.  Because Plaintiff provides no authority or argument in opposition to Defendants' motion to dismiss the individual defendants, the Court will treat the motion as conceded.  *See Hopkins v.*

*Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).

Accordingly, Plaintiffs' claims against the individual defendants are **DISMISSED**.[5]

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss, Dkt. 7, is **GRANTED** in part and **DENIED** in part.  Plaintiff's claims for damages for violations of D.C. law are **DISMISSED**.  To the extent that Plaintiff seeks prospective relief or seek to challenge the amended version of the CMPA, Plaintiff's claims are **DISMISSED** without prejudice.  If Plaintiff is able to allege facts demonstrating that she faces a prospective, concrete injury, she may file an amended complaint within 14 days of this decision.  Plaintiff's claims against the individual defendants are **DISMISSED.**

It is **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 24, 2015

---

[5]  In a footnote in Defendants' reply brief, Dkt. 6 at 5, they assert that Plaintiffs' claims are barred by *res judicata* because Plaintiff was part of the certified class in the *Lightfoot* action when Claim One was dismissed.  Because this argument was raised only in a footnote in reply, the Court will not address it at this time.  Defendants, however, are free to raise it in an appropriate motion.