## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KAREN BERRYMAN-TURNER,[1]<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No. 14-00035 (RDM) |

### MEMORANDUM OPINION

Plaintiff Karen Berryman–Turner, a former employee of the D.C. Department of Corrections, alleges that the D.C. Department of Employee Services terminated her disability compensation benefits without adhering to the requirements of the Due Process Clause of the Fifth Amendment and District of Columbia law.  The Court granted in part the District's motion to dismiss the original complaint, *see Barryman-Turner v. District of Columbia*, 115 F. Supp. 3d 126 (D.D.C. 2015), and Berryman-Turner subsequently filed a seven-count amended complaint, *see* Dkt. 10.  The first five counts assert constitutional claims under 42 U.S.C. § 1983.  Dkt. 10 ¶¶ 28–44.  The sixth alleges that the District violated subsections 1–623.24(b) and (d) of the D.C. Code by requiring Berryman-Turner to seek reconsideration of the order terminating her benefits before allowing her to request an administrative hearing.  Dkt. 10 ¶ 46.  And the seventh count

---

[1] The complaints and caption in this case record Plaintiff's name as "Karen Barryman-Turner." *See* Dkt. 1 at 1; Dkt. 10 at 1.  But other documents in the record, including a letter from Plaintiff to her representative in Congress, spell her name as "Berryman-Turner." Dkt. 11-4 at 1, 2; *see also* Dkt. 11-2 (Termination Notice); Dkt. 11-3 (ALJ Decision); Dkt. 11-5 (Final Compensation Order).  The Court will amend the caption accordingly.

alleges that Berryman-Turner is or will be entitled to future damages "if a work related injury worsens." Dkt. 10 ¶¶ 47–49.

The matter is now before the Court on the District's Motion to Dismiss and for Summary Judgment. *See* Dkt. 11. That motion argues (1) that counts one, three, four, and five are barred by *res judicata*; (2) that Berryman-Turner is barred from seeking damages for the violation of D.C. law alleged in count six under the law-of-the-case doctrine; (3) that Berryman-Turner lacks standing to assert the claims for injunctive and declaratory relief raised in count seven; and (4) that Berryman-Turner was afforded all the process she was due in the revocation of her benefits. *Id.* at 1. For the reasons set forth below, the Court will **GRANT** the District's Motion to Dismiss and for Summary Judgment.

## I.  BACKGROUND

The relevant factual background of this case is undisputed. Karen Berryman-Turner worked as a correctional officer for the D.C. Department of Corrections. Dkt. 10 at 2, ¶¶ 4-5. During the course of her employment, she suffered two injuries to her head. On March 3, 1996, while she was lowering a bucket to a co-worker, a strong gust of wind caused a metal crank to swing at her head, knocking her unconscious. Dkt. 11-4 at 1. Shortly after she returned to work from that injury, her supervisor, who did not realize that Berryman-Turner was behind him, slammed a door in her face, causing her to suffer a concussion. *Id.*; Dkt. 11-3 at 3.

Berryman-Turner received disability compensation benefits from the District for both injuries. Dkt. 10 at 6–7, ¶¶ 25–26. On April 15, 2003, however, the District notified her of its intent to terminate her medical benefits effective May 17, 2003. *Id.* at 7, ¶ 27. The District's decision was based on two independent medical reports—an independent medical examination report dated December 9, 2002, in which Robert A. Smith M.D. opined that "Ms. Berryman-

Turner could return to work on a full duty basis," and a second IME report dated April 2, 2003, in which A. Jerry Friedman, M.D. opined that "Ms. Berryman-Turner is able to return to work without limitations or restrictions." Dkt. 11-2 at 1. The District's notice also informed Berryman-Turner of her right either to request reconsideration or to appeal the decision to the Department of Employment Services ("DOES"). *Id.* The notice provided for an extension of benefits through the reconsideration process, should Berryman-Turner elect to pursue that course, but informed her that her benefits would not continue through the appeals process if she chose that option. *Id.* Berryman-Turner declined to seek the reconsideration and appealed the District's decision to a DOES Administrative Law Judge; as a result, her benefit payments terminated on May 17, 2003. Dkt. 10 at 7, ¶ 27. The Administrative Law Judge upheld the revocation of Berryman-Turner's benefits on October 1, 2003. *Id.*

Before Berryman-Turner's benefits were terminated, a class-action suit was brought against the District challenging "the policies and procedures applied to terminate, suspend, and modify [the] disability compensation benefits" on behalf of a class of former D.C. employees whose disability benefits had been terminated. *Lightfoot v. District of Columbia* (*Lightfoot I*), No. 01–1484, 2007 WL 148777, at *1 (D.D.C. Jan. 16, 2007). On January 14, 2004, the Court certified a class that included "[a]ll persons who have received or will receive disability compensation benefits" under the relevant provisions of the D.C. Code, and "whose benefits have been terminated, suspended, or reduced since June 27, 1998 or whose benefits will be terminated, suspended or reduced in the future." *Lightfoot*, No. 01-1484, Dkt. 153 at 1 (D.D.C. Jan. 14, 2004). The Court subsequently modified the class, limiting it to those "whose benefits were terminated, suspended or reduced between June 27, 1998 and April 5, 2005." *Lightfoot*,

No. 01-1484, Dkt. 333 at 1 (Apr. 17, 2007).  There is no dispute that Berryman-Turner was a member of both iterations of the *Lightfoot* class.

Like the present action, the *Lightfoot* case alleged that the District's procedures for terminating or modifying disability benefits violated the Due Process Clause of the Fifth Amendment and D.C. law, and it sought declaratory and injunctive relief.  *See* Third Am. Compl., *Lightfoot*, No. 01–1484, Dkt. 152 at 3, 32 (D.D.C. Sept. 7, 2003).  After substantial motions practice and a related appeal, the *Lightfoot* court ultimately dismissed all of the class-wide claims, except for the as-applied due process challenge to the District's alleged failure to provide beneficiaries with an adequate opportunity to show that they were entitled to continue to receive benefits.  *See Lightfoot I*, 2007 WL 148777, at *1; *Lightfoot v. District of Columbia* (*Lightfoot II*), No. 01-1484, 2007 WL 1087474, at *1 (D.D.C. Apr. 10, 2007).  The court dismissed the facial challenge to D.C. Code § 1623.24(d) because plaintiffs failed to establish "that no set of circumstances exist under which the [law] would be valid."  *Lightfoot II*, 2007 WL 1087474, at *4 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  The court dismissed the other constitutional claims on the merits for failure to state a claim.  *See Lightfoot I*, 2007 WL 148777, at *1.  The court then declined to exercise supplemental jurisdiction over the sole D.C. law claim, and dismissed it without prejudice.  *Id*.  Thus, after the *Lightfoot* court's order of April 10, 2007, the only surviving claim against the District was the as-applied challenge to D.C. Code § 1–623.24(d).  *Lightfoot II*, 2007 WL 1087474, at *6.

After the *Lightfoot* parties completed further discovery on the remaining claim, the court concluded that the plaintiffs could "satisfy neither the 'commonality' requirement of Rule 23(a)(2) nor the 'cohesiveness' requirement of Rule 23(b)(2)."  *Lightfoot v. District of Columbia*

(*Lightfoot III*), 273 F.R.D. 314, 324 (D.D.C. 2011).  As a result, the *Lightfoot* court decertified

the class on January 10, 2011.  *Id.* at 339.

## II.  LEGAL STANDARD

To resolve a motion to dismiss for lack of jurisdiction brought under Federal Rule of

Civil Procedure 12(b)(1), the Court may consider the complaint standing alone or in tandem with

any "undisputed facts evidenced in the record," and may also resolve any factual disputes

necessary to determine its jurisdiction.  *Herbert v. Nat'l Academy of Scis.*, 974 F.2d 192, 197

(D.C. Cir. 1992).  The burden of establishing jurisdiction rests on the party asserting it.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint,"

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002), and in evaluating such a motion, the

Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief,

and then determine whether the plaintiff has pleaded those elements with adequate factual

support to 'state a claim to relief that is plausible on its face,'" *Blue v. District of Columbia*, 811

F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009))

(alterations in original) (internal citation omitted).  Although "detailed factual allegations" are

not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a

claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678  (quoting *Twombly*, 550 U.S.

at 570).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and

unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above

the speculative level."  *Twombly*, 550 U.S. at 555–56 (quotation marks omitted).  In considering

a motion to dismiss for failure to state a claim, the Court "may consider only the facts alleged in

the complaint, any documents either attached to or incorporated in the complaint and matters of

which [the Court] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir.

2006). "Related proceedings in other courts" are among those matters of which the Court may

take judicial notice. *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981).

Finally, to establish entitlement to summary judgment, the moving party must show "that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

(1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is

capable of affecting the outcome of the litigation. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433

F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a

verdict for the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*,

477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record . . . ." Fed. R. Civ. P. 56(c)(1)(A). In considering a motion for summary judgment, "[t]he

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Pepco*, 447 F.3d 843, 850 (D.C. Cir.

2006). The non-movant's opposition, however, must consist of more than allegations or denials

and must be supported by affidavits, declarations, or other competent evidence, setting forth

specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.

v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must provide evidence that would permit

a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C.

Cir. 1987). If her evidence is "merely colorable" or "not significantly probative," the court may

grant summary judgment to the moving party. *Liberty Lobby*, 477 U.S. at 249–50.

## III. DISCUSSION

The District moves to dismiss Claims One, Three, Four, Five, Six, and Seven for failure

to state a claim, arguing that *Lightfoot I* precludes Claims One, Three, Four, and Five; that this

Court's decision on July 24, 2015 already dismissed what is now Claim Six, *see Barryman-*

*Turner*, 115 F. Supp. 3d at 137; and that Claim Seven is not ripe for adjudication.  The District

moves for summary judgment on Claim Two, Berryman-Turner's as-applied due process

challenge to the revocation of her benefits.  The Court will consider each argument in turn.

### A.    Motion to Dismiss: Preclusion

The District advance two variations of the preclusion argument.  First, it argues that

Claims One, Three, Four, and Five are barred by the doctrine of *res judicata* in light of the

decision in *Lightfoot I*.  Second, it argues that Claim Six is barred by the law-of-the-case doctrine

in light of the Court's previous decision in this case, *Barryman-Turner*, 115 F. Supp. 3d 126

(D.D.C. 2015).  *See* Dkt. 11 at 3.  As explained below, the Court will grant the District's motion

to dismiss as to all five claims.

#### 1.    *Res Judicata*

The District argues that Plaintiff's Claims One, Three, Four, and Five are barred by the

doctrine of *res judicata*, which "holds that a judgment on the merits in a prior suit bars a second

suit involving identical parties or their privies based on the same cause of action."  *Apotex, Inc.*

*v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).  In the class-action context, the doctrine means that

"a judgment in a properly entertained class action is binding on class members in any subsequent

litigation."  *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984).  "Dismissal of a case for

failure to state a claim," moreover, "is an adjudication on the merits with preclusive effect."

*Asemani v. Gov. of Islamic Rep. of Iran*, 304 F. App'x 871, 871 (D.C. Cir. 2008) (per curiam)

(*citing Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)); *accord* Fed. R.

Civ. P. 41(b).  Three elements are required to establish the preclusive effect of a prior

determination of a claim: (1) "the same issue now being raised must have been contested by the

parties and submitted for judicial determination in the prior case" (2) "the issue must have been

actually and necessarily decided by a court of competent jurisdiction in that prior case" and (3)

"preclusion in the second case must not work a basic unfairness to the party bound by the first

determination."  *Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

As to the first requirement, Berryman-Turner admits that she was a member of the

*Lightfoot* class; indeed, she relied on her class membership to defeat the District's statute-of-

limitations defense at an earlier stage of this case.  Dkt. 5 at 3 ("the statute of limitations was

tolled during the time when the *Lightfoot* case was proceedings and the Plaintiff was a member

of the potential class anticipated by the *Lightfoot* complaint").  And she admits that "[t]he

*Lightfoot* Complaint is substantially identical to the [original] Complaint as filed by the Plaintiff

in this matter."  *Id.*  A cursory comparison of the third amended *Lightfoot* complaint and the

operative first amended complaint in this case reveals that the relevant claims are "substantially

identical":

| Berryman-Turner First Amended Complaint | Lightfoot Third Amended Complaint |
|---|---|
| "D.C. Code § 1-624.24(d) on its face permits the Defendant to modify, suspend or terminate disability compensation benefits upon "reason to believe a change of condition | "D.C. Code § 1-623.24(d)[2] on its face permits the Defendants to modify, suspend or terminate disability compensation benefits upon "reason to believe a change of |

---

[2]  D.C. Code § 1-623.24 is the current version of the statute governing modification of disability benefit awards.  The complaint in this case mistakenly cites D.C. Code § 1-62*4*.24(d), which was the identical provision in the 1999 version of the D.C. Code.  The current version of § 1-624.24 has no subpart (d), is not relevant to this case, and reads, in its entirety, "[t]he Department of Employment Services shall submit quarterly reports, until January 1, 1997, on the effectiveness of outplacement services."  D.C. Code § 1-624.24.

| | |
|---|---|
| has occurred" without affording beneficiaries adequate and timely notice and opportunity to be heard in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution."<br><br>Claim One, Dkt. 10 at 7, ¶ 29. | conditions has occurred" without affording beneficiaries adequate and timely notice and opportunity to demonstrate a continuing entitlement to benefits in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution."<br><br>*Lightfoot*, Third Amended Complaint Claim One, No. 01-1484, Dkt. 152 at 28, ¶ 132. |
| "As a matter of standard agency practice, the notices of termination, suspension, or modification issued by Defendant violate the Due Process Clause of the Fifth Amendment to the United States Constitution in that they inadequately and inaccurately advise beneficiaries of their right to appeal adverse decisions."<br><br>Claim Three, Dkt. 10 at 8, ¶ 35. | "As a matter of standard agency practice, the notices of termination, suspension or modification issued by Defendants violate the Due Process Clause of the Fifth Amendment to the United States Constitution in that they had inadequately and inaccurately advised beneficiaries of their right to appeal adverse decisions, failed to inform them of their right to review their case file, failed to inform them of the nature of reconsideration review and failed to advise them of their right to retain a legal representative."<br><br>*Lightfoot*, Third Amended Complaint Claim Three, No. 01-1484, Dkt. 152 at 29, ¶ 136. |
| "As a matter of standard agency practice, the notices of termination, suspension or reduction issued by Defendant violate the Due Process Clause of the Fifth Amendment to the United States Constitution in that they provide an insufficient and inadequate rationale for the decision made."<br><br>Claim Four, Dkt. 10 at 8, ¶ 38. | "As a matter of standard agency practice, the notices of termination, suspension or modification issued by Defendants violate the Due Process Clause of the Fifth Amendment to the United States Constitution in that they provide an insufficient and inadequate rationale for the decision made, an insufficient and inadequate statement of facts, evidence and legal standard relied upon in making the decision and an insufficient and inadequate opportunity to appeal such terminations, suspensions and modifications timely and successfully."<br><br>*Lightfoot*, Third Amended Complaint Claim Four, No. 01-1484, Dkt. 152 at 29, ¶ 138. |
| "As a matter of standard agency practice, the Defendant fails to engage in Reasoned | "As a matter of standard agency practice, the Defendants fail to engage in reasoned |

9

| decision making based upon review of a full record of evidence when terminating, suspending or reducing benefits in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution." | decision making based upon review of a full record of evidence when terminating, suspending or modifying benefits in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution." |
|---|---|
| Claim Five, Dkt. 10 at 9, ¶ 43. | *Lightfoot*, Third Amended Complaint Claim Five, No. 01-1484, Dkt. 152 at 29–30, ¶ 140. |

As to the second requirement, the court in *Lightfoot I* granted the District's motion to dismiss Claims Three, Four, and Five of the Third Amended Complaint. 2007 WL 148777, at *1. And in *Lightfoot II*, the court granted the District's motion to dismiss Claim One of the Third Amended Complaint. 2007 WL 1087474, at *1. Berryman-Turner does not contest that the *Lightfoot* court properly exercised jurisdiction in that case, and the Court can discern no reason to doubt that it had jurisdiction to decide the case.

Finally, as to the third requirement, Berryman-Turner does not argue that this case in any way "work[s] a basic unfairness to the party bound by the first determination," such as may occur "when the losing party clearly lacked any incentive to litigate the point in the first [case]." *Yamaha*, 961 F.2d at 254.

The Court will, accordingly, grant the District's motion to dismiss Claims One, Three, Four, and Five as barred by *res judicata*.

2.      *Law-of-the-Case Doctrine*

The District contends that Claim Six fails under the "law of the case" doctrine. Dkt. 11 at 8. That doctrine is a prudential bar that "directs a court not to alter a previous judicial determination unless unusual circumstances are present." *United States v. Eilberg*, 553 F. Supp. 1, 3 (D.D.C. 1981). It rests on the sensible premise that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d

10

1389, 1393 (D.C. Cir. 1996) (en banc).  Although a district judge does have the power to

reconsider or revisit an earlier decision, that power should only be used in "extraordinary

circumstances," *Eilberg*, 553 F. Supp. At 3, such as when there is an intervening change in the

law or when the previous decision was "clearly erroneous and would work a manifest injustice."

*Id.* at 1393–94.  Application of the law-of-the-case doctrine thus requires "a two-step process:  A

court must first determine whether the threshold requirements are met and [must] then ask

whether there are prudential reasons to ignore the applicable law-of-the-case." *Kimberlin v.

Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999).  Each step in this case is straightforward.

First, the threshold requirements are met because this Court previously dismissed Claim

Six on the ground that Berryman-Turner failed to comply with jurisdictional notice requirements

in D.C. law.  *Barryman-Turner*, 115 F. Supp. 3d at 136–37.  As the Court previously explained,

D.C. law requires a plaintiff seeking unliquidated money damages from the District to provide

notice in writing to the Mayor within six months of the injury giving rise to the claim, and the

plaintiff bears the burden of demonstrating compliance with that requirement. *Id.*  Berryman-

Turner did not meet that burden with respect to Claim Six in her original complaint, which

alleged in relevant part that "Defendants violate D.C. Code §§ 1-624.24(b) [and] (d) when they

require beneficiaries to seek reconsideration of orders of reduction, suspension or termination

prior to allowing them to request a hearing before a hearing officer."  Dkt. 1 at 9, ¶ 47.  She now

alleges the substantively identical claim that "Defendant violate[s] D.C. Code §§ 1-624.24(b)

[and] (d) when [it] require[s] beneficiaries to seek reconsideration of orders of reduction,

suspension or termination prior to allowing them to request a hearing before two hearing

officers."  Dkt. 10 at 9, ¶ 46.  Those are the same claim, and they require the same compliance

with the six-month notification requirement.  Berryman-Turner's amended complaint makes no

11

mention of any effort to provide the necessary notice, *see generally* Dkt. 10, and her opposition

to the District's motion to dismiss similarly ignores the issue, *see generally* Dkt. 12.

Second, Berryman-Turner has given the Court no reason to change course.  She does not

identify any intervening change in the law, previously unconsidered facts, or injustice that would

result from adhering to the Court's prior holding.

The Court will, accordingly, again dismiss her claim for damages under D.C. law.

**B.      Motion to Dismiss: Ripeness**

Claim Seven in Berryman-Turner's amended complaint alleges that "Plaintiff is entitled

to benefits *if* a work related injury worsens (*future* damages) including disability benefits and

medical care"; that "Plaintiff continues to experience complications from the head injuries she

sustained while an employee of the D.C. Government in March 1996"; and that "[*w*]*hen those*

*injuries would ripen into a compensable claim is unknown* but the amended compensation

notification process is as defective in this process today as it was when Plaintiff's injuries first

developed in 1996."  Dkt. 10 at 9, ¶¶ 47–49 (emphases added).  It further alleges that "Plaintiff

continues to incur medical expenses related to the head injuries of 1996 and will have those

expenses indefinitely."  *Id.* at 10, ¶ 50.

This claim requires some parsing.  It seems to include two distinct allegations:  first, that

Berryman-Turner continues to experience medical problems of the same kind and degree as she

has experienced since 1996; and second, that her medical condition may deteriorate at some

unknown point in the future, entitling her to more or different benefits than she had previously

received.  The first allegation raises a substantive (as distinct from procedural) challenge to the

revocation of Berryman-Turner's benefits, but because she does not expressly make such a

claim, or provide any basis on which she could do so, the Court will not entertain that theory of

liability here.  The second strand of Claim Seven, however, raises a procedural challenge; Berryman-Turner alleges that her medical condition will worsen sometime in the future and that she will then need to make a separate application for benefits, which will be subject to the same procedural hurdles she faced in 1996.  The problem for this claim is that the risk of a possible future procedural hurdle at some unknown date is not the kind of injury that satisfies Article III's requirement that federal courts decide only live "cases" and "controversies."  U.S. Const. art. III.

For Berryman-Turner to have standing—and for this Court to have jurisdiction—she must demonstrate (1) that she suffered or will suffer an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical'"; (2) a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely" that the injury would be "redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The injury requirement in the standing inquiry "bears a close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention."  *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975); *see also, e.g.*, *La. Env't Action Network v. Browner*, 87 F.3d 1379, 1384 (D.C. Cir. 1996) ("[t]hat ripeness considerations should influence our standing analysis . . . is neither surprising nor troublesome.").  When a plaintiff "seek[s] to enforce procedural (rather than substantive) rights, [she] must establish that 'the procedures in question are designed to protect some threatened *concrete* interest of [hers] that is the ultimate basis of [her] standing.'" *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 81–82 (D.C. Cir. 2012) (emphasis added).  To be sure, the imminence requirement may be relaxed in cases asserting procedural challenges, *id.* at 82, but it is not "wholly eliminate[ed]."  *Ctr. for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005).  Ultimately, "the ripeness doctrine . . . prevent[s]

courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . and also . . . protect[s] . . . agencies from judicial interference until an administrative decision has been" made "and its effects felt in a concrete way by the challenging part[y]." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

Berryman-Turner's frank admission that she does not know "[w]hen [her] injuries would ripen into a compensable claim," Dkt. 10 at 9, ¶ 49, confirms what is apparent from the rest of Claim Seven:  The risk of injury from some future procedural obstacle to a potential claim for benefits is too speculative and remote to sustain jurisdiction.  It is uncertain whether her medical condition will worsen; when it will worsen if it does; what procedures would govern a claim for benefits at that time; or whether and on what basis her hypothetical benefits application would be denied if and when she ever filed it.  Simply put, Berryman-Turner has failed to identify a non-speculative "concrete interest" that is ripe for adjudication.

## C.      Summary Judgment Motion

The District moves for summary judgment on Berryman-Turner's as-applied due process challenge, which alleges that "[a]s D.C. Code § 1-624.24(d) is applied, Defendant modifies, suspend[s] or terminate[s] disability compensation benefits upon 'reason to believe a change of condition has occurred' without affording beneficiaries adequate and timely notice and opportunity to be heard in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution."  Dkt 10 at 7–8, ¶ 32.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In practice, the determination of what counts as an opportunity to be heard, or what counts as a

14

meaningful time and a meaningful manner, calls on courts to apply a "flexible" test attuned to what "the particular situation demands." *Id.* at 334.  To help guide this determination, courts must weigh three factors:  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* at 335.

On its face, Claim Two of Berryman-Turner's amended complaint is sweeping and might implicate any of a number of different facets of the process that led to her losing her benefits. But in her opposition to the District's summary judgment motion, Berryman-Turner narrows the issue before the Court to a single question:  whether the District violated due process by terminating her disability compensation benefits on May 17, 2003, based on the independent medical examinations of two doctors, while failing to provide her with copies of the reports upon which the District relied until July 1, 2003, the day of her administrative hearing.  Dkt. 12 at 4–6. As Berryman-Turner tells it, "her benefits [were] terminated with no more specificity as to the basis . . . than the twenty five words contained in" the notice of termination.  *Id.* at 5.  She adds that the District "could have cured th[is] defect in their termination process by supplying a copy of the medical records upon which the decision was made" and that she was, as a result, "denied meaningful evidence used to determine her disability by the" District.  *Id.*  Although far from clear, her claim might be understood either (1) to challenge her loss of benefits for the six weeks between May 17, 2003—when the termination took effect—and July 1, 2003—when she received the medical reports—without sufficient explanation and support, or (2) to challenge the fairness of her administrative hearing on the ground that she did not receive the reports

sufficiently in advance of the hearing to allow for adequate preparation.  Either way, however, her claim fails.

Most significantly, to the extent that Berryman-Turner's argument implies that the District refused to make the medical records available to her, that is incorrect.  The District admits that it did not send her copies of the reports or tell her that they were available for her inspection.  *See* Dkt. 13 at 2.  But the undisputed evidence shows that, as a matter of policy, the District would have made those reports—and in fact, her entire file—available upon request. Dkt. 13-2 at 5–6 (Patterson Decl.).[3]  A similar claim, in fact, was raised and rejected in *Lightfoot I*.  There, Judge Kollar-Kotelly concluded that, "while Plaintiffs allege that the notices provided to claimants insufficiently advised them that they could access their case files it appears that claimants were, as a matter of policy, afforded such access."  *Lightfoot I*, 2007 WL 148777, at *11 n.6.  As a member of the plaintiff class in that case, Berryman-Turner would be hard pressed to explain why Judge Kollar-Kotelly's decision does not bind her, *see Yamaha*, 961 F.3d at 254, but, in any event, Berryman-Turner makes no effort to dispute the accuracy of the District's description of its policy on access to case files.  Accordingly, the Court will accept the uncontested evidence that Berryman-Turner had only to ask to be given access to her medical reports at any time after the notice of termination.  Moreover, because Berryman-Turner was represented by counsel at her administrative hearing, *see* Dkt. 11-3 at 1, she was not left to navigate the District's bureaucracy unaided.

Berryman-Turner's claim fails for other reasons as well.

---

[3]  The deposition of Alonzo Patterson, Associate Director of the Office of Benefits Administration Disability Compensation Program within the Bureau of Labor Standards in the D.C. Department of Employment Services, was part of the summary judgment record in *Lightfoot*.  *See Lightfoot*, No. 01-1484, Dkt. 429-24.

To the extent her claim focuses on her loss of benefits between the notice of termination and her administrative hearing, that injury is largely self-inflicted.  Berryman-Turner had the option of pursuing reconsideration, which would have kept her benefits in place for the duration of *that* proceeding.  Dkt. 11-2.  In the course of seeking reconsideration, moreover, Berryman-Turner could have requested access to the medical reports and could have raised any deficiencies with the reports before her benefits were terminated.

To the extent Berryman-Turner's claim focuses instead on the allegation that she did not receive the medical reports until the day of the administrative hearing, *see* Dkt. 12 at 5, that claim also fails.  Applying the three factors laid out in *Mathews*, the Court concludes that, although the cost to Berryman-Turner of an erroneous deprivation would have been high, and the costs to the District of providing copies of her medical reports or information on how to obtain them would have been low, the incremental decrease in the risk of an erroneous deprivation that Berryman-Turner's preferred procedure would have afforded would have been negligible in this case.

With respect to the first *Mathews* factor, Berryman-Turner's private interest in avoiding a wrongful deprivation was substantial.  If she truly was unable to work at the time her benefits were revoked, the decision would very likely have imposed a substantial hardship on her.  Similarly, the third *Mathews* factor supports her Due Process claim.  It would have cost the District little to make Berryman-Turner aware of the procedure for obtaining her medical records in its notice of proposed termination, and it would have cost next to nothing to send copies of the reports with that notice.

The problem for Berryman-Turner lies in the second *Matthews* factor—the risk of an erroneous deprivation given the procedures used, as compared to the risk that would have existed

had the District employed the additional procedures she proposes.  Receiving copies of the medical reports in advance of the hearing might have allowed Berryman-Turner to prepare and to present an expert rebuttal of the conclusions in those reports.  The Administrative Law Judge did consider a report Berryman-Turner submitted from an independent neurologist, as well as the reports of her treating physician.  *See* Dkt. 11-3 at 6, 7 (Administrative Law Judge Decision).  Yet she fails to explain how those witnesses might have modified or supplemented their reports if they had received the reports from the District's experts in advance of the hearing, and, more generally, she fails to identify any additional evidence she would have offered or argument she would have made.  The record in Berryman-Turner's administrative proceeding, moreover, was kept open for ten days after the hearing to allow the District to submit additional evidence on a question relating to damages.  *See* Dkt. 11-3 at 1.  Had Berryman-Turner requested the same courtesy, it would have allowed her ample time to submit any additional evidence or arguments to rebut the medical records the District relied upon that was not available during the hearing, or to request an extension of time to submit additional evidence.

As the Supreme Court explained in *Mathews*, "the decision whether to discontinue disability benefits will turn, in most cases, upon 'routine, standard, and unbiased medical reports by physician specialists' concerning a subject whom they have personally examined."  *Mathews*, 424 U.S. at 344 (quoting *Richardson v. Perales*, 402 U.S. 389, 404 (1971)).  The Court stressed the "reliability and probative worth of written medical reports," and emphasized that "while there may be 'professional disagreement with the medical conclusions' the 'specter of questionable credibility and veracity is not present."  *Id.* (quoting *Richardson*, 402 U.S. at 405).  Even if such concerns might "be a factor in the ultimate disability assessment in some cases," the Court noted

that "procedural due process rules are shaped by the risk of error inherent in the truthfinding

process as applied to the generality of cases, not the rare exceptions." *Id.*

Because Berryman-Turner offers no argument that earlier receipt of the medical reports

would have made any difference in her case, the Court will grant summary judgment in favor of

the District on Claim Two.

**CONCLUSION**

For the reasons discussed above, the Court will **GRANT** the District's motion to dismiss

Claims One, Three, Four, Five, and Six as precluded, and to dismiss Claim Seven for lack of

jurisdiction.  It will also **GRANT** the District's motion for summary judgment on Claim Two.

A separate order will issue.

/s/ Randolph D. Moss
 RANDOLPH D. MOSS
 United States District Judge

Date:  February 3, 2017